### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

DAVID TYLER MONTALDI,

       Petitioner,

v.                                        Case No. 15-cv-12452

DUNCAN MACLAREN,

       Respondent.

_____/

### OPINION AND ORDER DENYING THE INITIAL AND
### SUPPLEMENTAL HABEAS CORPUS PETITIONS AND
### DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner David Tyler Montaldi, acting through counsel, brings this habeas

corpus action under 28 U.S.C. § 2254.  (ECF Nos. 1, 12.)  He challenges his Michigan

convictions for two counts of criminal sexual conduct (CSC) in the first-degree, *see*

Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of

thirteen), and one count of first-degree child abuse, *see* Mich. Comp. Laws §

750.136b(2) (serious physical or mental harm to a child).  He claims that:  (1) there was

insufficient evidence that he sexually penetrated the complainant; (2) he was denied a

fair trial when the prosecution's expert witnesses opined that the complainant had been

abused, and trial counsel was ineffective for failing to object to the testimony; (3) his trial

attorney deprived him of effective assistance by failing to investigate and present a

substantial defense; (4) the prosecutor used improper and falsified testimony and made

improper comments to the jury during opening statements and closing arguments; (5)

he was deprived of his right to counsel by trial counsel's failure to interview prosecution

witnesses before trial; (6) trial counsel was ineffective for failing to (a) furnish testimonial

evidence or an expert opinion, (b) search for more than one pro-prosecution witness, and (c) consult a potential expert witness without providing the person with any materials; (7) trial counsel was ineffective for failing to object to, or challenge, voice recordings; (8) the prosecutor violated Petitioner's right to remain silent and not to testify; and (9) his appellate attorney on direct appeal was ineffective for failing to raise all his claims on appeal.  (ECF No. 1, PageID.3; ECF No. 12, PageID.122-61.)

Respondent Duncan Maclaren, through the Michigan Attorney General, urges the court to deny relief on grounds that:  the state court's rejection of Petitioner's first three claims was not objectively unreasonable; Petitioner's fourth, fifth, seventh, and eighth claims are procedurally defaulted; and Petitioner's sixth claim fails on the merits. (ECF No. 17, PageID.3704-07).  Having reviewed the pleadings and state-court record, the court agrees with Respondent that Petitioner is not entitled to relief.  Accordingly, the court will deny the initial and supplemental habeas petitions.

## I. BACKGROUND

### A.  The Charges, Trial, and Sentence

The charges against Petitioner arose from allegations that he physically and sexually abused his girlfriend's thirteen-month-old daughter, whom the court will refer to as "the complainant" or "the child."  Petitioner's first trial ended in a mistrial because the jury was unable to reach a verdict.  *See* 1/31/12 Trial Tr. (ECF No. 16-13, PageID.1457).  The prosecution then re-tried Petitioner.  The Michigan Court of Appeals summarized the evidence at Petitioner's second trial as follows:

> Defendant was babysitting his girlfriend's 13–month old daughter when the child suffered the following injuries: (1) four skull fractures (one in the front, one in the back, and one on each side of her head), (2) subdural brain hemorrhaging with hematomas in at least two locations, (3) sheering injuries

to her brain, including of the tissue that connects the two halves of the brain together, (4) severe hemorrhaging in the three layers of her retinas in both eyes, (5) bruising across the entire length of her forehead, (6) a large abrasion on her chin, (7) a bruise under her chin, on the left side of her neck, (8) a complete tear of the labial frenulum (the tissue that connects the lip to the gum line), (9) a fractured left wrist, (10) a strained cervical ligament (it runs from the base of the skull to the base of the spine), (11) a bright red pronounced bruise on her left buttock, (12) two lacerations on her hymen, and two tears on her anus.  Medical experts in child abuse testified that: (a) skull fractures are caused by blunt force trauma; (b) brain hemorrhaging, sheering brain injuries, and retinal hemorrhaging (particularly in all three layers of the retina) are caused by rapid acceleration/deceleration motions, including shaking back and forth; (c) a torn labial frenulum is usually caused from something being shoved in the mouth; and (d) a cervical ligament strain is usually caused by severe whiplash.

According to the evidence, defendant was the only person with the child at the time the child suffered these injuries at his house.  Defendant did not call for emergency medical assistance after the child suffered these injuries, although she was having difficulty breathing and he had to give her "rescue breaths."  Instead, defendant called the child's mother at work and told her to come over.  When the child's mother arrived and saw the child, she called 911 immediately.  The child was first taken to Mt. Clemens General Hospital where she was placed on a respirator.  The child was then transferred to St. John's (sic) Children's Hospital for extensive medical treatment and care.  Defendant first told police that, while he was in the bathroom for ten or fifteen minutes, the child fell off the couch and his 200 pound dog sat on the child.  Later defendant told his father in a recorded telephone call that he dropped the child down a flight of eight stairs and his dog fell down the stairs at the same time.

*People v. Montaldi*, No. 312276, 2014 WL 265525, at *1 (Mich. Ct. App. Jan. 23, 2014).

On July 26, 2012, the jury found Petitioner guilty, as charged, of two counts of first-degree CSC and one count of first-degree child abuse.  *See* 7/26/12 Trial Tr. (ECF No. 16-21, PageID.2721-*22*).  On August 28, 2012, the trial court sentenced Petitioner to two concurrent terms of 25 to 50 years in prison for the CSC convictions and a consecutive term of 86 to 180 months (6 years, 2 months to 15 years) for the child-abuse conviction.  *See* 8/28/12 Sentence Tr. (ECF No. 16-22, PageID.2745-47).

## B.  The Direct Appeal

In an appeal of right to the Michigan Court of Appeals, Petitioner argued through counsel that:  (1) his CSC convictions should be vacated because there was insufficient evidence that he sexually penetrated the complainant; (2) the prosecution's expert witnesses improperly stated their medical opinions that the complainant had been physical abused, and trial counsel was constitutionally ineffective for failing to object; and (3) his trial attorney's failure to investigate and present a substantial defense denied him the right to effective assistance of counsel.  *See* Defendant-Appellant's Brief on Appeal, p. ii (ECF No. 16-23, PageID.2777).

In a *pro se* supplemental brief, Petitioner raised the following claims: (4) he was entitled to a new trial due to the prosecutor's prodigious use of improper and falsified testimony and her improper comments to the jury during opening and closing arguments; (5) he was denied effective assistance by counsel's failure to properly investigate and provide an adequate defense; and (6) there was insufficient evidence to support his three convictions, and the cumulative effect of errors denied him a fair trial. *See* Appellant's Suppl. Brief on Appeal (ECF No. 16-23, PageID.3002-03).  The Michigan Court of Appeals rejected Petitioner's claims in an unpublished, *per curiam* opinion.  *See Montaldi*, 2014 WL 265525.

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court.  *See* Pro Per Appl. for Leave to Appeal (ECF No. 16-24, PageID.3212-18).  He also raised a few new issues, including a claim that the prosecutor commented on the competency and materiality of the witnesses' opinion testimony, vouched for witnesses, relied on opinion evidence, stated that was unlikely

the events occurred as reported by Petitioner, shifted the burden of proof, asked leading questions, and elicited hearsay and opinion testimony.  Petitioner also alleged that appellate counsel was ineffective for failing to raise or preserve all of Petitioner's claims in the appeal of right.  (*Id*. at PageID.3219-22).  On June 24, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it.  *See People v. Montaldi,* 847 N.W.2d 508 (Mich. 2014).

### C.  The Initial Habeas Petition and State Collateral Review

On July 9, 2015, Petitioner filed his initial habeas corpus petition, raising the first four claims that he presented to the Michigan Court of Appeals in the appeal of right. As noted above, those claims alleged that:  (1) there was insufficient evidence that he sexually penetrated the complainant; (2) the prosecution's expert witnesses improperly stated their medical opinions that the complainant was physically abused, and trial counsel was ineffective for failing to object; (3) trial counsel was ineffective for failing to investigate and present a substantial defense; and (4) the prosecutor used improper and falsified testimony and made improper comments to the jury.  *See* Pet. (ECF No. 1, PageID.3-4).

Several weeks after filing his habeas petition, Petitioner moved for a stay of the federal proceeding so that he could exhaust state remedies for newly discovered claims.  *See* Petitioner's Mot. for Stay and Abeyance (ECF No. 6).  On September 10, 2015, the court granted Petitioner's motion for a stay and administratively closed this case.  *See* Order (ECF No. 8).

Petitioner then filed a motion for relief from judgment in the state trial court.   He argued that his Fifth Amendment right to remain silent was violated when the prosecutor

stated that Petitioner was protecting himself in the courtroom by refusing to tell anyone beside his father what had happened to the complainant. *See* Defendant-Appellant's Mot. for Relief from J. (ECF No. 16-26). Petitioner also filed a supplemental motion for relief from judgment in which he asserted that his trial attorney: (1) failed to conduct pretrial investigative interviews with the prosecution's witnesses; (2) failed to furnish any testimonial evidence or expert opinion, failed to search for more than one qualified expert, and only cursorily and preliminarily consulted one expert; and (3) failed to object to, or challenge, the admission of voice recordings that contradicted his initial explanation of the events. Petitioner also claimed that appellate counsel was cause for his failure to raise his new issues on direct appeal. *See* Defendant-Appellant's Suppl. Mot. for Relief from J. (ECF No. 16-29).

On February 1, 2017, the state trial court denied Petitioner's motion for relief from judgment. The trial court determined that some of the issues were decided against Petitioner on direct appeal and that Petitioner had failed to show "cause" for not raising the other claims on appeal and actual prejudice or a significant possibility that he was innocent. *See* Op. and Order (Macomb Cty Cir. Ct. Feb. 1, 2017); (ECF No. 16-31).

Petitioner appealed the trial court's decision, raising only the claims about trial and appellate counsel. The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Montaldi*, No. 339384 (Mich. Ct. App. Dec. 21, 2017). On November 7, 2018, the Michigan Supreme Court denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Montaldi*, 919 N.W.2d 271 (Mich. 2018).

### D.  The Supplemental Habeas Petition

In 2018, Petitioner filed a supplemental petition for the writ of habeas corpus and a motion to re-open this case.  *See* Petitioner's Suppl. Pet. and Mot. to Reopen Habeas Proceedings (ECF No. 12).  The supplemental petition raises claims about Petitioner's trial and appellate attorneys and the prosecutor's alleged violation of Petitioner's right to remain silent.  On September 26, 2018, the court granted Petitioner's motion to re-open his case and set briefing deadlines.  *See* Order (ECF No. 13).  Respondent then filed an answer in opposition to the petitions (ECF No. 17), and Petitioner filed a reply brief (ECF No. 26).

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413, 120 S.Ct. 1495. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must be objectively unreasonable. *Id.,* at 409, 120 S.Ct. 1495.

*Id.* at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  THE CLAIMS RAISED ON DIRECT REVIEW

#### A.  Sufficiency of the Evidence

Petitioner alleges that his convictions for first-degree CSC must be vacated because there was insufficient evidence that he sexually penetrated the complainant's anus and vagina.  He admits that there was evidence of genital and anal penetration, but he claims there was no evidence beyond a reasonable doubt that he penetrated the complainant.  He argues that the verdict was based on inferences which were not logically connected and that the jury was required to guess and make conclusions about his culpability.  *See* Pet. (ECF No. 1, PageID.3); Defendant-Appellant's Brief on Appeal (ECF No. 16-23, PageID.2788-90).

The Michigan Court of Appeals addressed Petitioner's claim on direct appeal.  It found no merit in Petitioner's claims and concluded that the "circumstantial evidence

and the reasonable inferences arising from the evidence were sufficient for the jury to conclude beyond a reasonable doubt that defendant was the person who penetrated the child's genital and anal openings."  *Montaldi*, 2014 WL 265525, at *2.

### 1.  Clearly Established Federal Law

It is well established that "the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"[R]eview of a state-court conviction for sufficiency of the evidence is very limited" because federal habeas courts "give two layers of deference to state-court convictions."  *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).  First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam* opinion quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

Second, on habeas review, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable.' "  *Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Renico*, 559

U.S. at 733); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

### 2.  Application of the Law

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.  Petitioner was charged with violating Mich. Comp. Laws § 750.520b(1)(a), which states that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]hat other person is under 13 years of age."

The statute simply requires proof of sexual penetration with a minor under 13 years of age; the defendant's intent is not an element.  *People v. Gonzales*, No. 328060, 2016 WL 7607827, at *6 (Mich. Ct. App. Dec. 29, 2016) (unpublished).  The term "sexual penetration" is defined in the statute as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body."  Mich. Comp. Laws § 750.520a(r).

In the present case, the complainant's age was not disputed, and there were no witnesses to the crime.  Nevertheless, as the Michigan Court of Appeals pointed out:

> the evidence established that defendant was the only person home with this child when she suffered numerous and life-threatening injuries to several parts of her body that were inconsistent with defendant's changing explanations for how the injuries occurred.  Further, the medical expert testimony indicated that the specific injuries the child suffered—including multiple skull fractures, subdural hematomas, sheering injuries, massive retinal hemorrhaging, facial and neck bruising, a strained cervical ligament, a torn frenulum, and bright red bruising on the buttocks—were not

consistent with a 200–pound dog sitting on the child or with the child tumbling down an eight-step stairway with a dog as defendant claimed.

*Montaldi*, 2014 WL 265525, at *2.

One physician opined that "the child's hymen (which is an internal structure) and anal lacerations were not consistent with defecation or cleaning actions as defendant had claimed; rather, they were consistent with penetration."  *Id.*; *see also* 7/24/12 Trial Tr. at pp.176-77 (ECF No. 16-19, PageID.2409-10) (Dr. Mary Lou Angelelli's testimony); 7/25/12 Trial Tr. at pp. 46-50 (ECF No. 16-20, PageID.2486-90) (Dr. Marcus McGraw's testimony).  Physical evidence in Petitioner's home, including the child's blood and a child's wet "hoodie" in the bathroom, also tended to implicate Petitioner because, during the investigation of the case, he denied taking the baby in the bathroom.  *See Montaldi*, 2014 WL 265525, at *2.

A rational trier of fact could have concluded from the physical evidence in Petitioner's home, his inconsistent explanations for the child's injuries, and the expert witnesses' testimony, that Petitioner sexually penetrated the complainant.  Further, the state appellate court's conclusion – that the circumstantial evidence and reasonable inferences from the evidence were sufficient proof that Petitioner penetrated the child – was objectively reasonable.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter,* 562 U.S. at 102.

Although Petitioner maintains that the jury's verdict was based on illogical inferences and speculative conclusions, a federal habeas court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Tanner*, 867 F.3d at 672.  The court "gives the prosecution the benefit of all reasonable inferences from the testimony," *United States v. Abboud,* 438 F.3d 554, 589

(6th Cir. 2006)*,* and the reasonable inferences in Petitioner's criminal case were that he penetrated the child's genitals.  He has no right to relief on his challenge to the sufficiency of the evidence.

### B.  The Expert Witnesses' Testimony and Counsel's Failure to Object

The second habeas claim concerns opinions expressed by two of the prosecution's expert witnesses.  Pediatrician Mary Lou Angelelli, for example, testified that:  bleeding in the complainant's subdural space and retinal area was "abusive head trauma," *see* 7/24/12 Trial Tr. at pp. 166-67 (ECF No. 16-19, PageID.2399-2400); the laceration to the child's anus was suspicious for sexual abuse, *id*. at p. 179, PageID.2412; the child's frenulum injury was "a common injury in abuse of infants, and . . is highly specific for abuse which means that most of the babies who have that injury have been abused," *id*. at pp. 181-82, PageID.2414-15; and the injuries which she saw were the result of child abuse, *id*. at pp. 201-02, PageID.2434-35.

A second pediatrician, Dr. Marcus DeGraw, testified that the child "suffered multiple forms of traumatic impact" and that, "without an appropriate explanation, those were . . . forms of physical child abuse."  *See* 7/25/12 Trial Tr. at p. 62 (ECF No. 16-20, PageID.2502).  Dr. DeGraw also opined that injuries to the child's vaginal and anal areas were inflicted and not caused by a fall down the stairs with the dog, *id*. at p. 63, PageID.2503, and the injuries to the anus came from a penetrating act, *id*. at pp. 89-90, PageID.2529-30.

Petitioner contends that the two doctors' testimony violated his right to due process and Michigan law on opinion testimony.  He also contends that trial counsel

was ineffective for failing to object to the testimony.  *See* Pet. (ECF No. 1, PageID.3);

Defendant-Appellant's Brief on Appeal (ECF No. 16-23, PageID.2791-95).

The Michigan Court of Appeals disagreed with Petitioner.  It determined that the

expert testimony was proper and that defense counsel was not ineffective for failing to

object because an objection to the evidence would have been futile.  *See Montaldi*,

2014 WL 265525, at *3.

## 1.  Legal Framework

Federal habeas courts usually do not question errors in the application of state

law, especially rulings on the admission of evidence.  *Cooper v. Sowders*, 837 F.2d 284,

286 (6th Cir. 1988).  **"**[S]tates have wide latitude with regard to evidentiary matters

under the Due Process Clause," *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017),

and "to the extent that any testimony and comments violated Michigan's rules of

evidence, such errors are not cognizable on federal habeas review."  *Hall v. Vasbinder*,

563 F.3d 222, 239 (6th Cir. 2009).

 An evidentiary error does not rise to the level of a federal constitutional claim

warranting habeas corpus relief unless the error rendered the proceeding fundamentally

unfair.  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  The state court's

interpretation of state law, moreover, binds this court sitting in habeas corpus.

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

To prevail on his claim about trial counsel, Petitioner must show that "counsel's

performance was deficient," and that "the deficient performance prejudiced the

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's

performance is deficient if "counsel's representation fell below an objective standard of

reasonableness." *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).  In a habeas case, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*,  563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted).  In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 113, __, 136 S. Ct. 1149, 1151 (2016) (*per curiam*). "When § 2254(d) applies, the question is . . . whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

## 2.  Application

The Michigan Court of Appeals distinguished Petitioner's case from the state-court decisions on which he relied by pointing out that the child did not testify and that his case was not a credibility contest between him and the child.  The Court of Appeals

also noted that the purpose of the expert testimony was to describe the child's physical injuries in detail, "not to explain the child's post-incident behavior as compared to certain behavioral characteristics recognizable in child sexual abuse victims." *Montaldi*, 2014 WL 265525, at *3. Finally, the Court of Appeals noted that the expert witnesses did not testify that Petitioner physically abused the child.

Petitioner's reliance on the Sixth Circuit's decision in *Cooper* also does not help him. Although the Sixth Circuit granted habeas relief in *Cooper*, that case involved a detective who testified that he had found no evidence linking certain other suspects to the crime and that the only evidence which linked anyone to the crime was the defendant. *See Cooper*, 837 F.2d at 287. Drs. Angelelli and DeGraw did not testify that Petitioner was guilty of physically abusing the complainant or that all the evidence pointed to him and only him. Thus, their testimony was not impermissible opinion testimony.

Furthermore, the trial court instructed the jurors that they did not have to believe an expert's opinion and that it was up to them to decide whether they believed the testimony and how important they thought it was. The court then stated that, when deciding whether to believe an expert's opinion, the jurors should think carefully about the reasons for the expert's opinion, the facts, whether the expert's opinion made sense, and the other evidence in the case. *See* 7/26/12 Trial Tr. at p. 96 (ECF No. 16-21, PageID.2712).

For all these reasons, the alleged evidentiary error did not violate Petitioner's right to due process, the state court's decision was objectively reasonable, and defense counsel satisfied *Strickland's* deferential standard.

### C.  Ineffective Assistance and the Alleged Failure to Investigate

The third habeas claim alleges that trial counsel deprived Petitioner of a fair trial and effective assistance by failing to investigate and present a substantial defense. According to Petitioner, trial counsel failed to (1) contact and call lay witnesses to testify about his good character, (2) call expert medical witnesses to rebut the testimony of the prosecution's expert witnesses, (3) exercise the rule of completeness, and (4) properly cross-examine police witnesses regarding the incomplete investigation and collection of evidence from Petitioner's home.  *See* Pet. (ECF No. 1, PageID.3); Defendant-Appellant's Brief on Appeal (ECF No. 16-23, PageID.2796-99).  The Michigan Court of Appeals disagreed with Petitioner's arguments and found no merit in his claim.

### 1.  *Strickland*

As noted above, to prevail on a claim "that counsel's assistance was so defective as to require reversal of a conviction," the defendant "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.   "[T]he proper standard for attorney performance is that of reasonably effective assistance."  *Id*.  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689.   "There are countless ways to provide effective assistance in any given case[,]" and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 689-90.   On habeas review, the Supreme Court's cases require federal courts to "use a ' doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Titlow*, 571 U.S. at 15.

### 2.  Application of *Strickland*

### a.  The Failure to Call Witnesses

Petitioner alleges that his trial attorney should have called witnesses on his behalf.  Defense attorneys have certain basic duties, including the "duty to advocate the defendant's cause," *Strickland*, 466 U.S. at 688, and the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *id*. at 691.  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

But "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[C]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353–54 (6th Cir. 1993).

### i.  Character Witnesses

Petitioner alleges that trial counsel should have produced lay witnesses to testify about his good character.  In an affidavit that Petitioner presented to the Michigan Court of Appeals on direct review, he averred that he arranged to have character witnesses travel to Michigan from outside the state, that his attorney was aware of the witnesses, and that the witnesses were never called.  *See* Aff. in Support of Motion (ECF No. 16-23, PageID.2812, ¶ B).  However, he did not identify the witnesses; nor did he explain what the witnesses would have said had defense counsel produced them at trial.  The Michigan Court of Appeals, therefore, reasonably concluded that defense counsel's failure to call character witnesses did not deprive Petitioner of a substantial defense.  This court agrees and concludes that defense counsel's failure to produce character witnesses did not fall below an objective standard of reasonableness.

### ii.  Defense Expert Witness

Petitioner claims that his attorney should have produced an expert medical witness who could have testified about head injuries caused by stairway falls.  To support this argument Petitioner attached to his state appellate brief an article that was published in the Journal of Forensic Sciences.  *See* App. to Defendant-Appellant's Brief on Appeal (ECF No. 16-23, PageID.2805-10) (Patrick E. Lantz and Daniel E. Couture, M.D., <u>Fatal Acute Intercranial Injury, Subdural Hematoma, and Retinal Hemorrhages Caused by Stairway Fall</u>, Journal of Forensic Sciences, November 2011).   The introductory abstract for the article states that the report "contradicts the prevalent belief of many physicians dealing with suspected child abuse that low-height falls by young children are without exception benign occurrences and cannot cause fatal intracranial

injuries and severe retinal hemorrhages." *Id.* at PageID.2805.  In the concluding

paragraph, however, the authors admit that "[m]ost childhood stairway and low-level

falls do not cause serious head injuries," and that the published reports cited in their

article "are discordant and controversial, making the correct classification of a young

child's death following a reported short fall a diagnostic challenge." *See id.*,

PageID.2809.

The article also does not identify the other injuries which the complainant

suffered from a possible fall, and Petitioner has not identified an expert witness who

would have been willing and able to testify for him on that subject.  The Court of

Appeals, therefore, reasonably concluded that Petitioner was not deprived of a

substantial defense by counsel's failure to present expert medical testimony on injuries

caused by falling down some stairs.

*Strickland*, moreover, "specifically commands that a court 'must indulge [the]

strong presumption' that counsel 'made all significant decisions in the exercise of

reasonable professional judgment.' " *Pinholster*, 563 U.S. at 196 (quoting *Strickland*,

466 U.S. at 689-90).  The court also must "presume that decisions of what evidence to

present and whether to call or question witnesses are matters of trial strategy." *Cathron

v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720,

749 (6th Cir. 2002)).

For all the foregoing reasons, trial counsel's failure to produce an expert witness

on stairway falls did not amount to constitutionally ineffective assistance, and the state

court's rejection of Petitioner's claim was not unreasonable.  Petitioner has no right to

relief on his claim.

### b.  The Rule of Completeness

Petitioner alleges next that trial counsel failed to exercise the rule of completeness found in Michigan Rule of Evidence 106.  Rule 106 reads:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Petitioner argued in his *pro se* supplemental brief on appeal that trial counsel should have used Rule 106 to introduce recorded phone calls that he made to the child's mother immediately after the incident in question.  Petitioner asserted that the calls were exculpatory because they would have shown that, contrary to the prosecutor's argument, he intended to call the 911 operator and was not trying to cover up his guilt.  He asserts that the recordings also would have shown that he panicked and was in a state of shock at the time, and that he decided to call the 911 operator after his mind cleared and the initial shock dissipated.

Decisions about what evidence to present are presumed to be matters of trial strategy, *Cathron*, 77 F. App'x at 835, and the phone calls between Petitioner and the child's mother included Petitioner's initial explanation that the child was injured when his dog sat on her.  *See* 7/20/12 Trial Tr. at p. 133 (ECF No. 16-18, PageID.2185).  This explanation would have contradicted his defense at trial that the child was injured when he dropped her and she fell down some stairs.

Further, as the Michigan Court of Appeals observed, "[c]ontrary to his claims, the recordings would have tended to establish that defendant had sufficient time, the physical ability, and the presence of mind to make several telephone calls to the child's mother instead of calling for emergency medical assistance for this grievously injured

child."  *Montaldi*, 2014 WL 265525, at *5.  The recordings also would have

demonstrated that, "it was only after the child's mother left work, drove to defendant's

home, and saw her seriously injured child that the child's mother, not defendant, called

for emergency medical assistance, which significantly delayed medical treatment."  *Id*.;

*see also* 7/20/12 Trial Tr. at pp. 133-37 (ECF No. 16-18, PageID.2185-89).

For all these reasons, trial counsel was not ineffective for failing to introduce

recordings of the phone calls between Petitioner and the complainant's mother shortly

after the alleged crimes.  The Michigan Court of Appeals made an objectively

reasonable conclusion that Petitioner's claim lacked merit, and Petitioner has no right to

habeas relief on his claim.

### c.  The Cross-Examination of Police Witnesses

Petitioner asserts that trial counsel failed to properly cross-examine police

officers regarding the investigation and collection of evidence from his home.  In his *pro

se* brief on appeal, Petitioner claimed that defense counsel should have objected to the

admission of four pieces of evidence:  a syringe, a bed sheet, a bottle of xylocaine, and

a bottle of epinephrine.  *See* Defendant's Suppl. Brief on Appeal (ECF No. 16-23,

PageiD.3044-47).  The Michigan Court of Appeals rejected Petitioner's argument

because Petitioner failed to establish that an objection would have had merit and that,

but for the errors, the result of the proceedings would have been different.  *See

Montaldi,* 2014 WL 265525, at *6.

"Courts generally entrust cross-examination techniques, like other matters

of trial strategy, to the professional discretion of counsel."  *Henderson v. Norris,* 118

F.3d 1283, 1287 (8th Cir. 1997) (quoted with approval in *Jackson v. Bradshaw*, 681

21

F.3d 753, 765 (6th Cir. 2012)); *see also Higgins v. Renico*, 362 F. Supp. 2d 904, 916

(E.D. Mich. 2005) ("As a general rule, trial counsel's strategic decisions on how the trial

is to be conducted are afforded great deference.").

Petitioner's claim fails for the additional reason that the disputed evidence did not

prejudice his defense.  One forensic scientist testified that there was no seminal fluid or

sperm cells on the sheets, on the syringe, or on anything else that the expert examined.

S*ee* 7/20/12 Trial Tr. at pp. 57-58, 65-68 (ECF No. 16-18, PageID.2109-10, 2117-20).

And as Petitioner himself pointed out on appeal, a different expert testified that no DNA

was found on the bed sheet, *see id*. at p. 89, PageID.2141**,** and the child was excluded

as a donor of DNA on the syringe, *see id*. at pp. 93-94, PageID.2145-46.  In addition,

according to the detective in charge of the case, there was no evidence that a needle

was stuck in the child during the alleged crimes, and there was no evidence of xylocaine

in her blood.  *See* 7/25/12 Trial Tr. at pp. 159-60 (ECF No. 16-20, PageID.2599-2600).

Petitioner has failed to show that defense counsel's cross-examination of

prosecution witnesses was deficient performance and that the allegedly deficient

performance prejudiced him.  The Michigan Court of Appeals reasonably concluded that

defense counsel's performance did not deprive Petitioner of a fair and reliable trial, and

Petitioner has no right to habeas relief on his claim about counsel's cross-examination

of witnesses.

### 3.  Summary

The Michigan Court of Appeals summarized its rulings on Petitioner's

ineffectiveness claim by stating that Petitioner's "several arguments on appeal in

support of his claim that he was denied the effective assistance of counsel, including

those made in his Standard 4 brief, are without merit." *Montaldi*, 2014 WL 265525, at *

6. This conclusion was objectively reasonable for the reasons given above. And

because both trial counsel's performance and the state court's decision are entitled to

deference, the court declines to grant relief on Petitioner's third claim.

### D. The Prosecutor

Petitioner's fourth claim alleges prosecutorial misconduct. Petitioner contends

that the prosecutor used improper and falsified testimony and made improper

comments to the jury during opening statements and closing arguments. *See* Pet. (ECF

No. 1, PageID.3). Petitioner first raised this issue in his *pro se* supplemental brief on

direct appeal, where he alleged that several witnesses, including law enforcement

officers and medical professionals, gave testimony that contradicted their testimony

from his first trial or gave testimony that defied the facts. *See* Appellant's Supplemental

Brief on Appeal (ECF No. 16-23, PageID.3012-26). Petitioner also asserted that the

prosecutor made improper, highly prejudicial remarks to the jury during her opening

statement and closing argument. *See id*. at PageID.3026-31.

The Michigan Court of Appeals reviewed this claim for "plain error" because

Petitioner did not preserve the claim for appellate review by first raising the claim in the

trial court. *See Montaldi*, 2014 WL 265525. at *6. Respondent, therefore, argues that

Petitioner's claim is procedurally defaulted. The court agrees.

### 1. Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with

state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Pursuant to the related

doctrine, "a federal court will not review the merits of [a state prisoner's] claims,

including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  In this Circuit, "[a] habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.' " *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*)), *cert. denied*, 142 S. Ct. 482 (2021).

The relevant state procedural rule here is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.' " *People v. Cain*, 869 N.W.2d 829, 832 (Mich. 2015) (quoting *People v. Grant,* 520 N.W.2d 123, 128 (Mich. 1994)).  "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' " *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999) (quoting *Grant*, 520 N.W.2d at 130).

Petitioner admitted in his *pro se* brief on appeal that trial counsel did not raise the issue of the prosecutor's conduct in the trial court.  *See* Appellant's Suppl. Brief on Appeal (ECF No. 16-23, PageID.3012).  Thus, the first procedural default factor is satisfied.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" due to Petitioner' failure to preserve his claim for appeal by objecting in the trial court.   A state court's plain-error review is considered such an impediment to merits review as to be enforcement of a procedural rule.  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021) (citing *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.), *cert. denied*, 141 S. Ct. 276 (2020)); *accord Theriot*, 982 F.3d at 1004 (stating that "a state appellate court's review for plain error is enforcement of a procedural rule"); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default.").  The second procedural default factor is satisfied.

The third procedural default factor requires a determination of whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.  The Sixth Circuit Court of Appeals has determined that "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.' "  *Theriot*, 982 F.3d at 1004 (citing *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)).  Thus, the third procedural-default factor is satisfied.

## 2.  Cause and Prejudice; Miscarriage of Justice

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.' "  *Davila v. Davis*, 137 S. Ct. 2058, 2064-2065 (2017) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84 (1977)).  Petitioner has not alleged "cause and prejudice" for his procedural

default.  As such, he has abandoned any argument regarding cause and prejudice. *Wheeler v. Simpson*, 852 F.3d 509, 515 (6th Cir. 2017).

In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the court with any new and reliable evidence of actual innocence.  Therefore, a fundamental miscarriage of justice will not result from this court's failure to adjudicate the substantive merits of Petitioner's fourth claim.  That claim is procedurally defaulted.

### IV.  THE CLAIMS RAISED ON STATE COLLATERAL REVIEW

In his supplemental habeas petition, Petitioner raises the issues that he presented to the state trial court in his motion for relief from judgment and supplemental motion for relief from judgment.  The state trial court rejected the claims because Petitioner previously raised, or could have raised, the claims on direct review.  The State's appellate courts denied leave to appeal the trial court's decision. This court proceeds to review each of the claims in turn.

## A.  Constructive Denial of Counsel and Ineffective Assistance

Petitioner's fifth habeas claim alleges that his trial attorney provided ineffective assistance because the attorney failed to interview any of the prosecution's witnesses before trial.  As a result, Petitioner alleges, he was constructively denied his right to counsel and unable to subject the prosecution's case to any meaningful adversarial testing.  *See* Supplemental Pet. (ECF No. 12, PageID.125-31).

### 1. Procedural Default

Respondent argues that Petitioner's claim is procedurally defaulted because the state trial court wrote in its order denying Petitioner's motions for relief from judgment that, "[a]s to any issues that may not have been raised on appeal, the Court opines that defendant must show good cause for failing to raise them."  Op. and Order at p. 4 (Macomb Cty. Cir. Ct. Feb. 1, 2017); (ECF No. 16-31, PageID.3363).  The trial court, however, did not specify which issues Petitioner could have been raised on appeal.

One could conclude through the process of elimination that Petitioner's fifth claim was one of the claims that the trial court thought Petitioner could have raised on appeal, because the court mentioned certain other claims that the court thought Petitioner did raise on appeal.  But Petitioner is correct that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985) (quoting *Michigan v. Long,* 463 U.S. 1032, 1040 (1983)).  Because the trial court did not clearly and expressly state that Petitioner could have raised his claim on direct appeal, this court declines to treat Petitioner's claim as

procedurally defaulted.  The court's review is *de novo,* as no state court adjudicated the claim on the merits.  28 U.S.C. § 2254(d)(1); *Phillips v. White*, 851 F.3d 567, 575 (6th Cir. 2017).

## 2. *Cronic*

As noted above, Petitioner asserts that he was constructively denied his right to counsel by counsel's failure to interview prosecution witnesses before trial.  It is well established that a defense attorney's ineffectiveness can amount to no counsel at all,

> if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 696, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984)).  But the presumption of prejudice applies only when there is a *complete* denial of counsel, *Cronic*, 466 U.S. at 659, 104 S. Ct. 2039, or when counsel *entirely* fails to subject the prosecution's case to adversarial testing, *Bell*, 535 U.S. at 696, 122 S. Ct. 1843.  A petitioner is not entitled to a presumption of prejudice because his counsel was deficient "at specific points" of the proceeding. *Id.* at 697, 122 S. Ct. 1843.

*Coleman v. Bradshaw*, 974 F.3d 710, 720 n.4 (6th Cir. 2020) (emphases in original), *cert. denied*, 141 S. Ct. 2729 (2021).

The record in this case does not support Petitioner's allegation that trial counsel failed to subject the prosecution's case to adversarial testing.  The attorney represented Petitioner at Petitioner's first trial, and because that case ended in a mistrial, one can assume that defense counsel managed to convince at least one juror that the prosecution had not proved its case.

At Petitioner's second trial, defense counsel participated in a lengthy *voir dire* proceeding, and he gave an opening statement in which he stressed the presumption of innocence and set forth Petitioner's defense:  that Petitioner lost his grip on the child when he slipped on a landing and that the child was injured as she tumbled down eight

steps to the basement.  Defense counsel cross-examined all the prosecution witnesses, and he re-cross examined some of them.  He also made a partial motion for a directed verdict of acquittal, he consulted with Petitioner regarding a jury instruction on a lesser charge and whether Petitioner should testify in his own defense, he opposed the prosecutor's request for a jury instruction on a lesser offense, and he made a closing argument.

This summary of trial counsel's representation of Petitioner demonstrates that trial counsel subjected the prosecution's case to adversarial testing.  Thus, prejudice cannot be presumed.  The court is guided by the two-prong test set forth in *Strickland*: whether counsel's performance was deficient and whether the deficient performance prejudiced the defense.

### 3.  The Failure to Interview Prosecution Witnesses

Petitioner contends that trial counsel was ineffective for failing to interview any prosecution witnesses before trial.  "There is, however, no per se rule that failure to interview witnesses constitutes ineffective assistance.  Ineffective assistance cases turn on their individual facts." *Sanders v. Trickey*, 875 F.2d 205, 209 (8th Cir. 1989).

Trial counsel admitted in an affidavit dated January 21, 2016, that he did not interview any prosecution witnesses before either one of Petitioner's trials.  He explained, however, that he had acquired information about the witnesses from law enforcement reports, medical reports, the testimony at Petitioner's preliminary examination, and for the second trial, the testimony offered at Petitioner's first trial.[1]

---

[1] All the witnesses at Petitioner's second trial also testified at Petitioner's first trial.

*See* Defendant-Appellant's Appl. for Leave to Appeal, App. A (ECF No. 16-32, PageID.3453).

Trial counsel was not ill prepared for trial, as Petitioner contends. The record, in fact, demonstrates that trial counsel was well prepared, capable of addressing all the evidence, and adept at cross-examining even the defense expert witnesses' testimony. Defense counsel's "overall performance indicates active and capable advocacy," *Richter*, 562 U.S. at 111, and Petitioner has failed to show a substantial probability that the result of the trial would have been different had trial counsel interviewed prosecution witnesses before trial. He is not entitled to relief on his claim.

### B. Trial Counsel and the Lack of Expert Defense Witnesses

The sixth habeas claim concerns trial counsel's failure to use any defense experts when defending the charges against Petitioner. *See* Petitioner's Suppl. Pet. (ECF No. 12, PageID.131-48).

### 1. Dr. Stephen Guertin

Trial counsel did consult Dr. Stephen Guertin, an expert on child abuse. But he decided not to use Guertin as a witness because he thought Guertin's analysis and opinion would not help Petitioner's defense. *See* Defendant-Appellant's Appl. for Leave to Appeal, App. A, Aff. of Stephen T. Rabaut (ECF No. 16-32, PageID.3452). Dr. Guertin pointed out in a subsequent conversation with Petitioner's current attorney that trial counsel may have thought Guertin was as much of a risk to the defense as the prosecution's expert witnesses if the right questions were asked. *See id*., App. D., Transcript of Phone Interview with Dr. Stephen Guertin (ECF No. 16-32, PageID.3487).

Petitioner claims that trial counsel was ineffective for not providing Dr. Guertin with any written materials to review.  But Dr. Guertin stated in his conversation with Petitioner's current attorney that trial counsel had given him information in a narrative format and had advised him of the opinions of Drs. Angelelli and DeGraw.  *Id*. at PageID.3485.

Petitioner also contends that trial counsel consulted the wrong person because Dr. Guertin was a pro-prosecution witness.  The label "pro-prosecution," is based on a description of Dr. Guertin as someone who "has worked with Prosecuting Attorneys and Police within the area in order to assure effective prosecution of those cases."  *See* Defendant-Appellant's Appl. for Leave to Appeal, App. B, Excerpt from National Child Abuse Defense and Resource Center website (ECF No. 16-32, PageID.3455).  However, the very next sentence in that brief description of Dr. Guertin states that "Dr. Guertin is as invested in proving that children have not been abused as he is in supporting those who have been."  *Id*.

Further, during Dr. Guertin's conversation with Petitioner's current attorney, Guertin stated that, in his 34-year career, he probably got called twice as much by prosecutors than defense attorneys, and that currently, he probably testified for the prosecution and for defense attorneys almost an even number of times.  *See id*., App. D, Transcript of Phone Interview with Dr. Stephen Guertin (ECF No. 16-32, PageID.3489-90).  And when asked if he had recommended any other experts to trial counsel, Dr. Guertin responded that he had not, but that "there are very, very few people who will actually look at [these] cases."  *Id*. at PageID.3487-88.

Trial counsel exercised reasonable professional judgment when consulting Dr.

Guertin, and his decision not to use Dr. Guertin as a witness appears to have been a

strategic decision made after an investigation of the facts.  "[S]trategic choices made

after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable[.]"  *Strickland*, 466 U.S. at 690.  Thus, Petitioner's claim about trial

counsel's consultation with Dr. Guertin fails.

### 2.  Dr. Werner U. Spitz

Petitioner argues that, if trial counsel had adequately investigated the case, he

could have easily discovered Dr. Werner U. Spitz, who analyzed Petitioner's case after

trial and concluded that the child's injuries did *not* support a diagnosis of child abuse or

sexual assault.  In Dr. Spitz' opinion, none of the child's injuries were deliberately

inflicted, and Petitioner's initial explanation -- that his 200-pound dog sat on the child –

satisfactorily accounted for the child's injuries.  *See* Defendant-Appellant's Appl. for

Leave to Appeal, App. C, Op. Letter of Dr. Werner U. Spitz (ECF No. 16-32,

PageID.3461-66).

In his *pro se* brief on direct appeal, however, Petitioner described his initial

explanation about the dog causing the injuries as "pathetic" and a "pathetic lie to cover

up his failure to hold on to [the child]."  *See* Appellant's Suppl. Brief on Appeal (ECF No.

16-23, PageID.3034, 3041).   Elsewhere in the same brief, he described his initial story

about the dog sitting on the child as an "asinine lie."  *Id*. at PageID.3040.

The dog-did-it theory also contradicted Petitioner's explanation to his father:  that

he slipped on some golf balls and lost his grip on the child, who then fell down some

steps.  A recording of Petitioner's conversation with his father was played for the jury,

32

and because Petitioner himself apparently thought that his initial explanation for the child's injuries was untenable, counsel's failure to discover and consult Dr. Spitz did not prejudice the defense.  Trial counsel chose instead to argue that Petitioner's initial explanation for the injuries was a lie, that Petitioner was not on trial for lying, and that the child fell down some stairs with the dog. This approach satisfied *Strickland's* deferential standard.

### 3.  The Alternative Strategy

Although "[i]t can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts," "[t]here are . . . 'countless ways to provide effective assistance in any given case.' " *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689).  "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id*. (quoting *Strickland*, 466 U.S. at 689).

The record in this case suggests that trial counsel made a tactical decision not to use a defense expert witness and to rely instead on his cross-examination of witnesses to establish a defense.  For example, trial counsel managed to have registered nurse Gail Lippert admit that some of the child's blunt force injuries could have been caused by a fall, *see* 7/24/12 Trial Tr. at pp. 127-28 (ECF No. 16-19, PageID.2360-61), and that the anus can be penetrated in a way that is not sexual, *id*. at p. 129, PageID.2362.

Trial counsel also used his cross-examination of Dr. Angelelli to support the defense theory.  He elicited Dr. Angelelli's testimony that:  the child's wrist fracture could have resulted from a fall, *see id*. at pp. 184-85, PageID.2417-18; falling on a metal strip of stairs could cause a head fracture, *see* pp. 188-90, PageID.2421-23; the injuries she

saw could have occurred from repeated impacts without shaking, *id*. at 191-92, PageID.2424-25; falling down a flight of stairs can cause more than one impact, *id.* at pp. 192-93, PageID.2425-26; and the bruising and redness around the child's anal opening could have been caused by somebody harshly wiping the anal area, *id*. at p. 196, PageID.2429.  Trial counsel elicited additional testimony from Dr. Angelelli that: she could not say whether the child's anus had been penetrated, *id*. at pp. 199-200, PageID.2432-33; she could not prove child abuse; and even though something may look like child abuse, it is possible that it was not abuse, *id*. at pp. 201-02, PageID.2434-35.

Trial counsel also was successful in eliciting favorable testimony from Dr. McGraw, who said that if the child fell on metal strips on the stairs, she could have fractured her skull and arm and bruised her skull.  *See* 7/25/12 Trial Tr. at p. 71 (ECF No. 16-20, PageID.2511).  Dr. DeGraw also testified in response to defense counsel's questions that:  if the child were dropped and had struck her face, she could have torn her frenulum and experienced subdural bleeding, *see id*. at pp. 72-73, PageID.2512-13; a caregiver could injure a child's hymen when trying to clean a child after the child defecated, *id.* at p. 77, PageID.2517; certain bowel movements can cause anal tears, *id*. at pp. 77-79, PageID.2517-19; and all the child's external injuries could be explained by the dog falling down the stairs with the child, *id*. at pp. 95-96, PageID.2535-36.

The court cannot say that trial counsel's decision to defend the case through cross-examination of prosecution's witnesses and arguments was ineffective assistance.  Petitioner, therefore, has no right to relief on his claim.

### C.  Trial Counsel and the Admission of Jailhouse Recordings

Petitioner's seventh habeas claim alleges that trial counsel was ineffective for failing to object to, or challenge, the admission of recorded phone calls.  A detective identified one of the calls as being a conversation between Petitioner and his father three days after the alleged crimes.  Petitioner alleges that the prosecution failed to lay a sufficient foundation for admitting the recording under state law because there was no showing that the detective was familiar with the voices and could identify them.  *See* Petitioner's Suppl. Pet. (ECF No. 12, PageID.149-54).

Petitioner further alleges that trial counsel's failure to object to the recording prejudiced him because his explanation in the phone call – that the child fell down some stairs after he tripped and lost his grip on her -- conflicted with his initial defense that the child fell off the couch and that his dog sat on the child.  Petitioner alleges that the inconsistent defense theory could have led the jury to distrust the defense and rule against him.  *See id.* at PageID.154-56.

Respondent contends that this claim is procedurally defaulted because the trial court stated in its order denying Petitioner's motions for relief from judgment that, "[a]s to any issues that may not have been raised on appeal," Petitioner "must show good cause for failing to raise them."  The court rejects Respondent's procedural-default argument because the trial court did not clearly and expressly state that Petitioner's claim about the jailhouse recordings was one of the issues that Petitioner could have raised on appeal.

The court, nevertheless, agrees with Respondent that Petitioner's claim lacks

substantive merit.  His claim is based on Michigan Rule of Evidence 901, which states:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming to the requirements of this rule:
>
> . . .
>
> Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Mich. R. Evid. 901(a) and (b)(5).

The detective who testified about the jailhouse phone call in question was

familiar with Petitioner because she interviewed him on the day of the alleged crimes.

*See* 7/25/12 Trial Tr. at pp. 134-35 (ECF No. 16-20, PageID.2574-75).  She explained

at trial that all phone calls made from inside the jail to the outside are recorded, that the

phone company monitors the calls, and that someone provided her with a disc

containing the conversation in question.  She claimed to know that the conversation in

dispute was between Petitioner and his father because Petitioner said, "Dad," in the

call, and his father said, "Son," in the call.  *See* 7/25/12 Trial Tr. at pp. 125-28 (ECF

No.16-20, PageID.2565-68).  The detective also seemed to be familiar with Petitioner's

father because, when asked if she had any contact with Petitioner's father, she

answered, "Yes."  *Id*. at p. 126, PageID.2566.  Given this testimony, the recording

arguably satisfied Rule 901(b)(5).

Even if the recording was not properly authenticated, the defense theory asserted during the call was that the child's injuries resulted from a fall down some stairs.  Because that was Petitioner's defense at trial, and because trial counsel had previously asserted that defense in his opening statement, *see* 7/19/12 Trial Tr. at p.38 (ECF No. 16-17, PageID.1940), trial counsel was not ineffective for failing to object to the recording.

### D.  Petitioner's Right to Remain Silent

Petitioner's eighth habeas claim alleges that the prosecutor violated his Fifth Amendment right to remain silent and not testify.  *See* Petitioner's Suppl. Pet. (ECF No. 12, PageID.156-59).  Petitioner relies on *Griffin v. California*, 380 U.S. 609 (1965), in which the Supreme Court held "that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Id.* at 615.

The factual basis for Petitioner's claim is the prosecutor's statement during closing arguments that Petitioner did not provide medical personnel with information about the child's condition after the incident "because he was protecting himself, just as he is in this Courtroom."  *See* 7/26/12 Trial Tr. at p. 43 (ECF No.16-21, PageID.2659). Petitioner claims that the prosecutor's remark about Petitioner protecting himself in the courtroom was a direct and flagrant attack on his right not to testify.

Respondent argues that Petitioner's claim is procedurally defaulted because Petitioner failed to raise the claim in the State's appellate courts on state collateral review and because he no longer has a remedy to exhaust.  The record supports

Respondent's factual assertion. *See* Defendant-Appellant's Appl. for Leave to Appeal in the Michigan Court of Appeals, pp. i-v (ECF No. 16-32, PageID.3369-73); Defendant-Appellant's Appl. for Leave to Appeal in the Michigan Supreme Court, pp. i-v (ECF No. 16-33, PageID.3529-33).

### 1. Exhaustion/Procedural Default

The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they present their claims to a federal court in a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement is satisfied if the prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the State's highest court "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan,* 526 U.S. at 845, 847. Thus, to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his claims to the state court of appeals and to the state supreme court before raising the claims in a federal habeas corpus petition. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).

The exhaustion requirement, however, refers only to remedies still available at the time of the federal petition; it is satisfied if the habeas petitioner's claims currently are procedurally barred under state law. *Gray v. Netherland,* 518 U.S. 152, 161 (1996). Stated differently,

> [e]xhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether

cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *accord Carruthers v. Mays*, 889 F.3d 273, 288 (6th Cir. 2018) (stating that, when a claim is unexhausted, but no state remedy remains available, the claim is procedurally defaulted, and a federal habeas court may not review the claim without a showing of cause and actual prejudice); *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) (stating that**,** "[i]f the petition[er] fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default").

Petitioner failed to raise his Fifth Amendment claim in the Michigan Court of Appeals and in the Michigan Supreme Court on state collateral review, and he no longer has a remedy to exhaust, because he already filed one motion for relief from judgment. In Michigan, "one and only one motion for relief from judgment may be filed with regard to a conviction," unless the subsequent motion is "based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion."  Mich. Ct. R. 6.502(G)(1) and (2). These exceptions to the rule on second or successive motions do not apply here. Therefore, Petitioner's Fifth Amendment claim is procedurally defaulted unless he can show cause for his procedural default and resulting prejudice or a miscarriage of justice.

### 2.  Judicial Estoppel

Petitioner contends that Respondent is judicially estopped from arguing that Petitioner's claim is procedurally defaulted, because an assistant prosecuting attorney for Macomb County argued during the state collateral proceedings that Petitioner fully

exhausted his Fifth Amendment claim on direct review, whereas counsel for Respondent is now arguing that the claim was not exhausted in state court.  *See* Petitioner's Reply to State's Summary Judgment Response (ECF No. 26, PageID.4170-94); *see also* People's Response to Defendant's Mot. for Relief from J. (ECF No. 16-30, PageID.3344-47); People's Answer to Defendant's Appl, for Leave to Appeal in the Michigan Supreme Court (ECF No. 16-33, PageID.3699-3702).

The rule known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 (2000)); *see also McMeans v. Brigano*, 228 F.3d 674, 686 (6th Cir. 2000) (stating that "[t]he doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding").

The pleadings and record in this case reveal inconsistent arguments by government attorneys as to whether Petitioner exhausted state remedies for his current claim on direct appeal.  But "it is 'well-settled that judicial estoppel does not apply where the prior inconsistent position occurred because of mistake or inadvertence.' " *United States v. Bates*, 730 F. App'x 281, 284 (6th Cir. 2017) (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005), and citing *New Hampshire*, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.")).  Here, the prior inconsistent position was a mistake.  Although Petitioner did challenge the prosecutor's closing remarks in his *pro se*

supplemental brief on direct appeal, he did not raise the issue as a Fifth Amendment claim.  Instead, he claimed that the prosecutor had (i) misled the jury into thinking that he talked to medical staff, (ii) incorrectly stated that she did not have to prove Petitioner's intent, and (iii) shifted the burden of proof.  *See* Appellant's Suppl. Brief on Appeal at pp. 19-22 (ECF No. 16-23, PageID.3028-31).

The Michigan Court of Appeals, moreover, did not treat Petitioner's claim as a Fifth Amendment claim.  As such, the assistant prosecuting attorney for the county erred when he concluded during post-conviction proceedings that Petitioner's claim was previously raised and resolved in state court.  Petitioner himself admits in his ninth habeas claim that appellate counsel did not raise the constitutional violations set forth in his supplemental petition on direct appeal.  *See* Petitioner's Suppl. Pet. (ECF No. 12, PageID.160).  This court, therefore, will not apply the judicial estoppel rule.

### 3.  Cause and Prejudice; Miscarriage of Justice

Petitioner's claim is procedurally defaulted, and he has failed to show "cause" for not raising his Fifth Amendment claim in the State's appellate courts.  He was represented by his current attorney at the time, and because there is no right to counsel on state collateral review, appellate counsel cannot be deemed "cause" for his procedural default.  *Coleman v. Thompson*, 501 U.S. at 756-57.

The court need not determine whether Petitioner was prejudiced by his procedural error because he has not shown "cause" for the error.  *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally

defaulted claim if he can demonstrate that a "failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. at 750.

Petitioner has not presented the court with any new evidence of actual innocence.  Therefore, a miscarriage of justice will not result from the court's failure to adjudicate his Fifth Amendment claim.  That claim is procedurally defaulted.

### 4.  The Merits; Harmless Error

Petitioner's claim lacks merit in addition to being procedurally defaulted because the prosecutor did not comment on Petitioner's silence or failure to testify.  And "[w]hen the alleged infringement consists of statements which do not comment directly on the defendant's failure to testify or suggest that an inference of guilt should be drawn from this fact, a reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation."  *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982).

The disputed remarks about Petitioner protecting himself were part of the prosecutor's theory that Petitioner lied about the cause of the complainant's injuries after the alleged crimes to protect himself and that he was continuing to protect himself at trial by providing an implausible explanation for how the child injured herself.  *See, e.g.,* 7/26/12 Trial Tr. at p. 34 (ECF No. 16-21, PageID.2650) ("One thing is clear with everything the Defendant does . . . he is always protecting himself, he's always shifting the blame, and you can hear that throughout all of these messages.").

Even if the prosecutor infringed on Petitioner's right to remain silent, "[i]mproper remarks by a prosecutor about a defendant's right to remain silent do not constitute a

structural error requiring automatic reversal." *Hall*, 563 F.3d at 235–36.  The alleged
constitutional error in Petitioner's case was harmless for the following reasons.

First, the jury would not necessarily have understood the prosecutor to be
commenting on Petitioner's failure to testify when she stated that Petitioner was
protecting himself in the courtroom.  Second, the remark was a fleeting one in a long
trial and as part of a lengthy closing argument.  Third, defense counsel stated during his
closing argument that Petitioner did not testify because the jurors had heard his story
and because the prosecution's evidence was not worthy of a response.  *See* 7/26/12
Trial Tr. at p.69 (ECF No. 16-21, PageID.2685).

Finally, the trial court instructed the jurors at the beginning of the trial that the
attorneys' opening statements and closing arguments were not evidence, that the jurors
must decide the case solely on the admissible evidence, and that Petitioner was not
required to prove his innocence or produce any evidence.  *See* 7/19/12 Trial Tr. at pp.
5-6, 8 (ECF No.16-17, PageID.1907-08, 1910).  Similarly, at the close of the case, the
trial court stated that:  Petitioner was not required to prove his innocence or do anything;
that he had a right not to testify; and that the jurors should not consider the fact that he
did not testify, nor let that affect their verdict.  *See* 7/26/12 Trial Tr. at pp. 87-88 (ECF
No. 16-21, PageID.2703-04).  The court also stated that the lawyers' statements,
arguments, and commentary were not evidence and that they should base their
decision only on the evidence admitted at trial.  *See id.* at pp. 88-90, PageID.2704-06.

"Although a general instruction at the end of closing statements may not be
sufficient to cure the full impact of a prosecutor's improper remarks in every case, the
instruction does lessen the impact of such remarks, as the jury is presumed to

follow *all* of the court's instructions, not just the contemporaneous ones." *Hall*, 563 F.3d at 238 (internal citations omitted, emphasis in original).  Therefore, to the extent the prosecutor's remarks about Petitioner trying to protect himself in the courtroom violated the Fifth Amendment, the remarks were harmless error, and Petitioner is not entitled to relief on his eighth claim.

### E.  Appellate Counsel

Petitioner's ninth and final claim alleges that his appellate attorney on direct review was ineffective for failing to raise habeas claims five through eight during the direct appeal.  He contends that those issues are stronger that the issues raised during the direct appeal and that any one of the issues could have changed the outcome of the appeal.  *See* Petitioner's Suppl. Pet. (ECF No. 12, PageID.160-61).

An appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal, and (2) there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).  Claims five through eight lack merit for the reasons given above.  "By definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Petitioner, therefore, has no right to relief on his ninth claim.

### V.  CONCLUSION

For all the reasons set forth above,

IT IS ORDERED that Petitioner's initial and supplemental petitions (ECF Nos. 1 and 12) are DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Additionally, reasonable jurists could not disagree with the court's resolution of Petitioner's constitutional claims or conclude that Petitioner's claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *accord Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

s/Robert H. Cleland                                /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 17, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 17, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                                      /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\2254\15-12452.Montaldi.dispositive opinion.docx

45